## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDGAR L. MERIDA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1992** |
| **BOARD OF COMMISSIONERS OF THE SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY–EAST, ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this employment-discrimination case is the motion[1] of Defendants the Board of Commissioners of the Southeast Louisiana Flood Protection Authority–East (the "Authority"), Kelli Chandler, Ken Pinkston, and Terry Durnin for summary judgment dismissing Plaintiff Edgar Merida's claims under Federal Rule of Civil Procedure 56. For the reasons that follow, the motion is **GRANTED**.

## I.    BACKGROUND

Edgar Merida, a self-described "Hispanic/Jewish senior male,"[2] worked for the Authority first as a police officer on patrol duty and then as an investigator on probationary status assigned to an FBI task force. The Authority's Regional Director, Kelli Chandler, later decided to pull the Authority's officers out of federal task forces. Merida disagreed with Chandler's decision and tried to convince the Authority to change course. But his efforts failed. Chandler fired him, citing his probationary status and her belief that his disagreement with her decision to end the task forces would make him a poor fit for return to patrol duty. This discrimination suit followed.

---

[1] ECF No. 45.
[2] ECF No. 51 at 1.

Before turning to the material facts, a word on the source of them: They are drawn from the properly supported facts listed in Defendants' statement of undisputed material facts in support of Defendants' motion for summary judgment.[3]

That is for two independent reasons. ***First***, the properly supported facts in Defendants' statement of facts are "deemed admitted" because Merida fails to properly "controvert[ ]" any of them in his opposition statement of facts.[4] LOCAL CIVIL RULE 56.2; *Wimsatt v. Jaber*, No. 22-CV-1012, 2024 WL 2187872, at *2 n.10 (E.D. La. May 14, 2024) (Long, J.) (facts not properly controverted are admitted under Local Civil Rule 56.2), *aff'd*, 2025 WL 711120 (5th Cir. Mar. 5, 2025) (per curiam).

***Second***, Merida's opposition statement of facts and opposition brief do not cite "particular parts of materials in the record" to show that any material fact is genuinely disputed. FED. R. CIV. P. 56(c)(1)(A). With limited exceptions,[5] Merida's summary-judgment submissions fail to "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his . . . claim[s]."

---

[3] ECF No. 45-2.

[4] ECF No. 51-1.

[5] Merida cites record evidence to support only these assertions: (1) Merida's supervisor at the FBI told Chandler that information Chandler thought was classified was in fact public, ECF No. 51 at 5–6; ECF No. 51-1 at 5–6; (2) the former Superintendent of Police for the East Jefferson, Orleans, and Lake Borgne Levee District, Kerry Najolia, told Merida that he would be in probationary status as an investigator for 12 months and "would not receive a reduction in salary, pension, and other civil service benefits," ECF No. 51 at 7; ECF No. 51-1 at 7; (3) after the FBI joint task force disbanded, two other investigators assigned to that task force, Pat Conaghan and Gerald Holmes, returned to "their previous permanent civil service positions" with all relevant benefits, ECF No. 51 at 7; ECF No. 51-1 at 7; (4) former Defendant Michael Brenckle, an employee of the Orleans Levee District Police Department, sent an email to Orleans Levee District Police Department officers urging them to "use caution if confronted by Merida," ECF No. 51 at 8; ECF No. 51-1 at 8; (5) the Authority and Chandler allowed another person formerly assigned to the FBI joint task force, Pat Conaghan, "to exhaust his civil service and family medical leave benefits before returning, but did not grant Merida the same choice," ECF No. 51 at 8; ECF No. 51-1 at 8; (6) Chandler allegedly did not seek the Authority's share of assets seized by the FBI task force, ECF No. 51 at 14; and (7) Merida's father was Mexican and his mother was Jewish, ECF No. 51 at 16. None of these facts is genuinely disputed and material to the Court's disposition of the motion for summary judgment on Merida's remaining claims.

*Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quotation omitted). The Court need not "sift through the record in search of evidence to support [Merida's] opposition." *Id.* (quotation omitted). So even if there were evidence somewhere in this summary-judgment record disclosing a genuine dispute of material fact, Merida's "fail[ure] even to refer to [that evidence] in [his] response to the motion for summary judgment" means "that evidence is not properly before the [Court]." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Having settled on the source of the facts, the Court recites the material, undisputed ones.[6]

The Authority is the Louisiana agency responsible for flood control on the east bank of the Mississippi River in Orleans, Jefferson, and St. Bernard Parishes.[7] The Authority controls two police departments: the East Jefferson Levee District Police Department and the Orleans Levee District Police Department.[8] Officers of those police departments are employed by the Authority and are part of Louisiana's civil-

---

[6] Merida's original petition is verified. ECF No. 1-1 at 16. His supplemental and amending complaint is not. ECF No. 23. Well-pleaded factual allegations in a verified complaint can be competent summary-judgment evidence to the extent those allegations are not conclusory and otherwise comply with the requirements of Federal Rule of Civil Procedure 56(c)(4). *See King v. Dugan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam). But Merida's opposition does not rely on the verified status of his original petition to establish the existence of a genuine dispute of material fact; in fact, Merida does not cite properly and with specificity any allegation of his original petition to try to establish or controvert any material fact, as Rule 56(c)(1)(A) required him to do. ECF No. 51. (As noted at footnote five, Merida's opposition cites portions of the record to support only seven facts and otherwise violates Rule 56(c)(1)(A) *in toto*.) Merida has forfeited any argument that any well-pleaded factual allegations that may be found in his original petition create a genuine dispute of material fact on any issue. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021) (explaining the ways a party can forfeit an argument by failing to adequately brief it). Forfeiture aside, because Merida's opposition "fails even to refer" to specific allegations in his original petition to try to create a genuine dispute of material fact, those allegations are "not properly before" the Court. *Malacara*, 353 F.3d at 405. The Court will not "sift through the record in search of evidence to support" Merida's claims; "it is [Merida's] burden to identify specific evidence in the record, and to articulate the precise manner in which that evidence supported [his] claim." *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 444 (5th Cir. 2024) (quotation omitted). Merida fails to meet that burden, as the Court explains below.

[7] ECF No. 45-2 at ¶ 1.

[8] *Id.* at ¶ 5.

3

service system.[9] The civil-service protections afforded those officers turn on the officer's status as "probationary" or "permanent."[10] "Permanent" officers can be fired only for cause; "probationary" officers can be fired at-will.[11] Only the "Appointing Authority" can hire, fire, discipline, promote, or demote the Authority's officers.[12] When Merida was fired, Kelli Chandler was the designated "Appointing Authority."[13]

Merida is Jewish and Hispanic.[14] But he identified himself in his personnel paperwork only as "Caucasian."[15] He first worked for the East Jefferson Levee District Police Department as a reserve deputy in 2012.[16] He became a full-time patrol officer in 2019.[17] About three months after going full-time, in December 2019, he joined a joint task force with the New Orleans FBI.[18] In that role, he reported for duty at the FBI office and no longer had regular duties with the East Jefferson Levee District Police Department.[19] But he remained an employee of the East Jefferson Levee District Police Department (and thus the Authority);[20] as a result, the East Jefferson Levee District Police Department could not hire a replacement to perform the patrol duties Merida had been performing before he joined the FBI task force.[21]

---

[9] *Id.* at ¶ 6.
[10] *Id.* at ¶ 7.
[11] *Id.* at ¶ 8.
[12] *Id.* at ¶9.
[13] *Id.* at ¶ 14.
[14] *Id.* at ¶¶ 21–22.
[15] *Id.* at ¶74.
[16] *Id.* at ¶¶ 25–26.
[17] *Id.* at ¶¶ 29–33.
[18] *Id.* at ¶¶ 34–35.
[19] *Id.* at ¶ 36.
[20] *Id.* at ¶ 38.
[21] *Id.* at ¶ 40.

4

To fix that personnel problem, the Orleans Levee District Police Department created an "Investigator" position and chose Merida for it.[22] Moving Merida to "Investigator" allowed the East Jefferson Levee District Police Department to hire an officer to do what Merida had been doing pre-task force.[23] Despite the different title, Merida's duties did not change: He remained assigned to the FBI joint task force.[24]

Merida was not the only officer employed by the Authority and assigned to federal task forces; two officers of the Orleans Levee District Police Department—Pat Conaghan and Gerald Holmes—were also assigned to federal task forces.[25] Holmes worked on a DEA task force, and Conaghan worked on the FBI task force.[26]

About 22 months after Merida joined the FBI task force, Chandler decided to end the Authority's participation in federal task forces.[27] She called an October 2021 meeting to notify the task-force officers of her decision.[28] Merida voiced his disagreement with Chandler's decision.[29] In the parking lot before the October 2021 meeting, East Jefferson Levee District Police Department Sergeant Ken Pinkston asked Merida "how's my favorite Jewish Spic investigator doing?"[30] Officer Pat Conaghan was standing beside Merida.[31] Merida says Pinkston called him a "spic" other times, but Merida does not recall any details of any other instance in which

---

[22] *Id.* at ¶¶ 41–43.
[23] *Id.* at ¶ 45.
[24] *Id.* at ¶ 46.
[25] *Id.* at ¶ 39.
[26] *Id.*
[27] *Id.* at ¶ 52.
[28] *Id.* at ¶ 53.
[29] ECF No. 45-3 at ¶ 21.
[30] ECF No. 45-8 at 35:1–3.
[31] *Id.* at 35:1–17.

Pinkston directed that slur at him.[32] Merida did not report any of Pinkston's comments to anyone at the Authority.[33] And Merida does not cite any evidence in the summary-judgment record supporting a conclusion that Chandler was aware of Pinkston's offensive comments.

After learning of Chandler's decision, Merida tried to persuade her to continue the Authority's participation in federal task forces.[34] But his efforts failed. About four months after the October 2021 meeting, in February 2022, Orleans Levee District Police Department Captain Mike Brenckle notified Merida and the other task-force officers that their task-force participation would end the next month and that they would return to the Orleans Levee District Police Department as patrol officers.[35]

Less than two weeks later, the Authority held a meeting.[36] There, Merida presented on the successes of the task forces and tried to persuade the Authority to allow officers to keep serving on them.[37] At that February 2022 meeting, East Jefferson Levee District Police Department Captain Terry Durnin gave Merida "the middle finger" and said "Fuck you, spic" under his breath as he walked by.[38] As with Pinkston's offensive comments, Merida does not cite any evidence in the record supporting a conclusion that Chandler was aware of Durnin's offensive comments.

---

[32] *Id.* at 48:19–23.
[33] ECF No. 45-2 at ¶ 71.
[34] *Id.* at ¶ 56.
[35] *Id.* at ¶ 58.
[36] *Id.* at ¶ 59.
[37] *Id.* at ¶ 60.
[38] ECF No. 45-8 at 41:10–14.

After the February 2022 meeting, Chandler reconsidered her decision to return the three task-force officers—Conaghan, Holmes, and Merida—to ordinary patrol duty.[39] Chandler "believed" that returning those three task-force officers to patrol duty "would be problematic" because (among other reasons) those officers "disagree[d] with [her] decision" to end the Authority's participation in the task forces.[40] The Authority's human-resources department told Chandler that Conaghan and Holmes held "permanent" civil-service status and could be fired only for cause, but that Merida "was in probationary status and could be dismissed for any reason."[41] With that knowledge, Chandler decided to fire Merida rather than return him to regular duty.[42] Chandler did not fire Conaghan or Holmes because she decided that her reasons for firing Merida "were not sufficient cause under the state civil service rules . . . ."[43] Chandler did not know Merida was Hispanic or Jewish before she fired him.[44]

After he was fired, Merida brought a difficult-to-decipher employment-discrimination suit against the Authority, Chandler, Pinkston, Durnin, and others in state court.[45] Defendants removed the case to this Court based on federal-question jurisdiction.[46] 28 U.S.C. § 1331. Merida then amended his original petition, but the amendment did not bring much clarity: Merida still did not identify clearly the causes of action he intended to assert or the Defendant(s) he intend to assert them against.[47]

---

[39] ECF No. 45-3 at ¶ 27.
[40] *Id.*
[41] *Id.* at ¶30.
[42] *Id.* at ¶ 31.
[43] *Id.* at ¶ 32.
[44] *Id.* at ¶ 33.
[45] ECF No. 1-1 at 3–18 (original petition).
[46] ECF No. 1.
[47] ECF No. 23 (supplemental and amending complaint).

Among other claims, Merida asserted that the Authority, Chandler, Pinkston, Durnin, and others are liable under 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Louisiana Employment Discrimination Law, LA. STAT. ANN. § 23:332(A)(1)–(2); and the Equal Protection Clause of the Louisiana Constitution, LA. CONST. ANN. art. 1, § 3; for discriminating against him because he is Jewish and Hispanic and for creating a hostile work environment.

After various preliminaries not relevant here, the Court granted in part and denied in part Defendants' partial motion for judgment on the pleadings.[48] *See Merida v. Bd. of Comm'rs of Se. La. Flood Prot. Auth.–E.*, No. 23-CV-1992, 2024 WL 4252748, at *15 (E.D. La. Sept. 20, 2024) (Long, J.). The Court stated that the only claims that survived that motion were a Title VII claim against the Authority; a Section 1983 claim against the Authority; a Section 1983 claim against Chandler; a Section 1983 claim against Pinkston; and Louisiana-law equal-protection claims against the Authority, Chandler, Durnin, and Pinkston.[49] *Id.*

Now, the Authority, Chandler, Durnin, and Pinkston move for summary judgment dismissing Merida's remaining claims.[50] Merida opposes.[51]

---

[48] ECF No. 43.

[49] Because Defendants' motion and supporting brief discuss potential remaining claims under the Louisiana Employment Discrimination Law "in an abundance of caution," ECF No. 45 at 1, the Court will analyze potentially remaining claims under that statute as well. But the Court does not analyze the new claims for First Amendment retaliation and intentional infliction of emotional distress to which Merida alludes in his opposition brief. ECF No. 51 at 7, 19–20. Those claims are "not properly before the Court" because Merida raised them "only in response to" Defendants' motion for summary judgment. *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quotation omitted).

[50] ECF No. 45.

[51] ECF No. 51.

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant will bear the burden of proof at trial, as Merida will here, the movant meets its initial burden by pointing to "an absence of evidence" supporting the nonmovant's claim. *Id.* at 325. The movant "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)  (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

9

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.  ANALYSIS

The Authority, Chandler, Pinkston, and Durnin move for summary judgment dismissing Merida's remaining claims: (A) Louisiana-law equal-protection claims against the Authority, Chandler, Pinkston, and Durnin; (B) discriminatory-discharge claims under Title VII, Section 1983, and the Louisiana Employment Discrimination Law against the Authority and Chandler; (C) hostile-work-environment claims against the Authority under Title VII, Section 1983, and the Louisiana Employment Discrimination Law; (D) hostile-work-environment claims against Pinkston under Section 1983; and (E) Section 1983 failure-to-stop-harassment claims against Chandler and the Authority. The Court considers each set of claims in turn.

### A.    Louisiana-Law Equal-Protection Claims

The Court grants summary judgment dismissing all of Merida's claims under the Louisiana Constitution's Equal Protection Clause because, as a matter of law, that provision does not create a private right of action for employment discrimination.

The Equal Protection Clause of the Louisiana Constitution states that "[n]o person shall be denied the equal protection of the laws." LA. CONST. ANN. art. I, § 3. That provision provides a mechanism for challenging the constitutionality of discriminatory laws. *See Winn v. New Orleans City*, 919 F. Supp. 2d 743, 751 (E.D. La. 2013) (Milazzo, J.). But it does not create a private right of action for employment discrimination. *See Washington v. Louisiana*, 628 F. App'x 914, 917 (5th Cir. 2015) (per curiam) (affirming dismissal of claim under Article I, Section 3 of the Louisiana Constitution because "[t]his provision does not create a private right of action").

Merida fails to respond to the argument that Article I, Section 3 does not create a private right of action for employment discrimination.[52] So Merida has forfeited any argument opposing dismissal of his equal-protection claims on that ground. *See, e.g., Tex. Ins. Co. v. Talisman Specialty Underwriters, Inc.*, No. 23-CV-3412, 2025 WL 592775, at *8 (E.D. La. Feb. 24, 2025) (Long, J.) (a party forfeits arguments opposing dismissal of a claim by failing to respond to arguments for dismissal of the claim (citing *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021))).

Accordingly, because Merida has no private right of action for employment discrimination under the Louisiana Constitution's Equal Protection Clause, Merida's employment-discrimination claims under that provision fail as a matter of law.

## B.    Discriminatory-Discharge Claims

The Court grants summary judgment dismissing all of Merida's discriminatory-discharge claims against the Authority and Chandler under Title VII, Section 1983,[53] and the Louisiana Employment Discrimination Law for two independent reasons. First, Merida fails to point the Court to evidence from which a reasonable jury could find that he made a *prima facie* case of intentional discrimination by the Authority and Chandler. And second, Merida fails to point the Court to evidence from which a reasonable jury could find that Chandler's proffered legitimate, nondiscriminatory reason for firing him was pretext for discrimination.[54]

---

[52] *See generally* ECF No. 51.

[53] Because the Authority is a state entity and Chandler is a state employee, the discriminatory-discharge claims against them must be asserted under Section 1983 rather than Section 1981. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (noting that Section 1983 provides the exclusive federal damages remedy against a state actor for a violation of the rights guaranteed by Section 1981).

[54] The Court does not reach Defendants' alternative argument that Merida's discriminatory-discharge claims should be dismissed because Merida cannot point to evidence that Chandler knew

The same analysis controls the Court's consideration of the discriminatory-discharge claims under Title VII, Section 1983, and the Louisiana Employment Discrimination Law. *See Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (Section 1983 and Title VII); *Clark v. City of Alexandria*, 116 F.4th 472, 485–86 (5th Cir. 2024) (Title VII and the Louisiana Employment Discrimination Law).

The Court evaluates the discriminatory-discharge claims under the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because Merida does not point the Court to any direct evidence of discrimination by Chandler.[55] *See Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021).

At step one of *McDonnell Douglas*, Merida must make a *prima facie* case of intentional discrimination. *See id.* If Merida makes a *prima facie* case, then the "burden of production" shifts to Chandler "to proffer a legitimate, nondiscriminatory reason for [her] action." *Id.* at 281–82 (citation omitted). And if Chandler does that, "the presumption of discrimination disappears," and Merida "must then produce substantial evidence indicating that the proffered legitimate, nondiscriminatory reason is a pretext for discrimination." *Id.* at 282 (quotation and alterations omitted).

---

Merida was Hispanic and Jewish before firing him. ECF No. 45-1 at 12–13; *cf. Toronka v. Continental Airlines, Inc.*, 411 F. App'x 719, 723 n.2 (5th Cir. 2011) ("[I]n a case of discrimination based on a protected status of which the employer would not obviously be aware, as is, for example, sometimes the case with religion or national origin, the employee must show that the employer was sufficiently aware of the employee's status to have been capable of discriminating based on it." (citations omitted)).

[55] Because it is undisputed that only Chandler was responsible for firing Merida, and because Merida does not direct the Court to any evidence from which a reasonable jury could find that Brenckle, Durnin, or Pinkston influenced Chandler's firing decision, comments by Brenckle, Durnin, and Pinkston cannot qualify as direct evidence of intentional discrimination with respect to Merida's discriminatory-discharge claims against the Authority and Chandler. *See, e.g., Jones v. La. Dep't of Health & Hosps.*, 471 F. App'x 344, 348 (5th Cir. 2012) (per curiam) ("Without a showing that the speaker of [discriminatory] remarks was a decisionmaker or had influence over a decisionmaker, a plaintiff cannot show discrimination." (citing *Rios v. Rossotti*, 252 F.3d 375, 379–80 (5th Cir. 2001))).

Merida's discriminatory-discharge claim fails at the first step of the *McDonnell Douglas* framework because he fails to point the Court to evidence from which a reasonable jury could find that he made a *prima facie* case of discrimination. To make a *prima facie* case of discrimination on summary judgment, Merida must point the Court to evidence showing that (1) he belongs to a protected group; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside his protected group or treated less favorably than other similarly situated employees outside the protected group. *See Clark*, 116 F.4th at 486.

Merida fails on the fourth prong. He does not point the Court to summary-judgment evidence showing that he was replaced by someone who is not of Hispanic or Jewish origin or that he was treated less favorably than a similarly situated coworker who is not of Hispanic or Jewish origin. *See Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024). To be "similarly situated," the coworker must "hold the same job or hold the same job responsibilities as" Merida; "must share the same supervisor or have his employment status determined by the same person as" Merida; and "must have a history of violations or infringements similar to that of" Merida. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quotation and alterations omitted). Merida's opposition suggests former task-force officers Pat Conaghan (a White male) and Gerald Holmes (a Black male) as potential comparators.[56] But Merida does not direct the Court to any evidence in the summary-judgment record establishing that either one was similarly situated to him. And in

---

[56] ECF No. 51-1 at 7.

any event, the undisputed summary-judgment record confirms that neither Conaghan nor Holmes was similarly situated to Merida: Conaghan and Holmes were permanent civil-service employees who could be fired only for cause;[57] Merida was a probationary employee who could be fired for any reason.[58] As a matter of law, permanent employees like Conaghan and Holmes are not similarly situated to a probationary employees like Merida. *See, e.g.*, *Thomas v. Johnson*, 788 F.3d 177, 180 (5th Cir. 2015) (collecting cases holding that probationary employees and permanent employees are not similarly situated).[59] Accordingly, because Merida fails to point the Court to evidence that he was replaced by someone outside his protected group or treated less favorably than another similarly situated employee outside his protected group, he fails to make a *prima facie* case of discrimination. So the Authority and Chandler are entitled to summary judgment at step one of *McDonnell Douglas*.

Even if Merida had made a *prima facie* case of discrimination, his discriminatory-discharge claim would fail at the third step of *McDonnell Douglas* because Merida lacks evidence that Chandler's proffered legitimate, nondiscriminatory reason for firing him was pretext for discrimination. Chandler says she fired Merida because Merida opposed her decision to end the Authority's participation in federal task forces, and she thought returning Merida to ordinary patrol duties "would be problematic because of, among many reasons, [Merida's]

---

[57] ECF No. 45-3 at ¶ 29.

[58] *Id.* at ¶ 30.

[59] Although Merida apparently disagrees with the Authority's classification of him as "probationary," ECF No. 51 at 3, he does not direct the Court to evidence controverting Defendants' properly supported assertions that he was, in fact, deemed probationary, and that Chandler thought he was on probationary status based on her discussions with the human-resources department.

disagreement with [her] decision."[60] Merida does not dispute that Chandler's stated reason for firing him is sufficiently "clear and reasonably specific" to qualify as a legitimate, nondiscriminatory reason under Fifth Circuit precedent. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) (quotation omitted). To avoid summary judgment, then, Merida must "produce substantial evidence" showing that Chandler's stated reason "is a pretext for discrimination" by pointing to "evidence of disparate treatment or by showing that [Chandler's] proffered explanation is false or unworthy of credence." *Id.* (quotation omitted). He fails to do so. He has not shown disparate treatment because, as explained above, he has not pointed to evidence of a similarly situated comparator. Nor has he pointed to evidence that Chandler's stated reason for firing him is "false or unworthy of credence." *Id.* (quotation omitted). So Chandler and the Authority are independently entitled to summary judgment on Merida's discriminatory-discharge claim at step three of *McDonnell Douglas*.

### C.    Hostile-Work-Environment Claims Against the Authority

The Court grants summary judgment dismissing all of Merida's hostile-work-environment claims against the Authority under Title VII, Section 1983, and the Louisiana Employment Discrimination law because Merida fails to direct the Court to summary-judgment evidence from which a reasonable jury could find that the Authority knew or should have known of Merida's alleged harassment by coworkers Durnin and Pinkston yet failed to address that alleged harassment promptly.

---

[60] ECF No. 45-3 at ¶¶26–27.

The same analysis controls the Court's consideration of Merida's hostile-work-environment claims against the Authority under each of the laws at issue—Title VII, Section 1983, and the Louisiana Employment Discrimination Law. *See Lauderdale v. Tex. Dep't of Crim. Just. Ins. Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (Title VII and Section 1983); *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 223 (5th Cir. 2015) (per curiam) (Title VII and the Louisiana Employment Discrimination Law).

But that analysis depends on whether Merida's alleged harassers—Durnin and Pinkston—were "supervisors" or mere coworkers. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If Durnin and Pinkston were Merida's "supervisors," then the Authority can be "strictly liable" for their alleged harassment of Merida. *See id.* If Durnin and Pinkston were mere coworkers, however, the Authority cannot be liable for Durnin's and Pinkston's alleged harassment unless the Authority "knew or should have known about the hostile work environment yet allowed it to persist." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019) (citations omitted).

Durnin and Pinkston were not Merida's "supervisors." An employee is a "supervisor" in this harassment context if "the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 570 U.S. at 431 (quotation omitted). Merida fails to point the Court to evidence in this summary-judgment record from which a reasonable jury could find that Durnin or Pinkston had power "to take tangible

17

employment actions against" him. *Id.* (quotation omitted). And that is for good reason: Only the designated "appointing authority"—here, Chandler—may discipline, hire, and fire State Civil Service employees. *See, e.g.*, *Bd. of Comm'rs, Port of New Orleans v. Livingston*, 546 So. 2d 259, 261 (La. Ct. App. 1st Cir. 1989) (discipline); *DuBois v. Dep't of Health & Hum. Res.*, 448 So. 2d 230, 231 (La. Ct. App. 1st Cir. 1984) (fire); La. Stat. Ann. § 38:330.5(A) (hire); *see also* La. Civ. Serv. R. 1.4 (defining "appointing authority"). Because Merida fails to point to evidence from which a reasonable jury could find that Durnin and Pinkston were designated "appointing authorit[ies]" with the power "to take tangible employment actions against" Merida, *Vance*, 570 U.S. at 431 (quotation omitted), there is no genuine dispute that Durnin and Pinkston were not "supervisors." So the coworker-harassment analysis applies.

Merida flunks that analysis. To recover against the Authority under the coworker-harassment analysis, Merida must show (among other things) that the Authority "knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp.*, Inc., 670 F.3d 644, 654 (5th Cir. 2012) (citation omitted). But Merida fails to point the Court to evidence from which a reasonable jury could find that the Authority knew or should have known about Durnin's and Pinkston's alleged harassment of him. In fact, Merida admits that he did not report Durnin's and Pinkston's alleged harassment of him.[61] Accordingly, because Merida does not point the Court to evidence from which a reasonable jury could find that the Authority knew or should have known about Durnin's and

---

[61] ECF No. 45-8 at 50:12–14; *id.* at 51:7–10;

Pinkston's alleged harassment yet failed to address it promptly, the Authority is entitled to summary judgment dismissing Merida's hostile-work-environment claims.

### D.    Hostile-Work-Environment Claim Against Pinkston

The Court grants summary judgment dismissing Merida's Section 1983 hostile-work-environment claim against Pinkston for two independent reasons. First, Merida fails to point to evidence from which a reasonable jury could find that Pinkston acted "under color of" state law—as Section 1983 requires—when Pinkston made harassing remarks to Merida. And second, Merida fails to point to evidence from which a reasonable jury could find that Pinkston's alleged harassment of Merida was sufficiently severe or pervasive to alter the conditions of Merida's employment.

Section 1983 creates a cause of action against "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State*" deprives someone of a federal constitutional or statutory right. 42 U.S.C. § 1983 (emphasis added). "As its text makes clear, this provision protects against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024). "This requirement that action be under color of state law is as essential as it is rigorous; a person does not act under color of state law solely by virtue of her relationship to the state, but depending on her function—*i.e.*, the nature of her challenged conduct." *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1411 (5th Cir. 1995) (citations omitted).

"A person acts under color of state law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010)

(quotation omitted). "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law." *Id.* at 465 (quotation omitted). "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). Acts of state officers "in the ambit of their personal pursuits" are not acts "under color of" state law. *Screws v. United States*, 325 U.S. 91, 111 (1945). For example, a Fifth Circuit panel held that a state-employed prison guard did not act "under color of" state law when he stabbed an inmate during a game of horseplay. *See Townsend v. Moya*, 291 F.3d 859, 862 (5th Cir. 2002) (per curiam). Because the guard and the inmate "were calling each other names, a purely private aim," *id.* (quotation omitted), the Fifth Circuit found "no genuine issue of material fact concerning whether [the guard's] actions were horseplay, and therefore not under color of state law," *id.* Along similar lines, another Fifth Circuit panel held that members of a state national guard did not act "under color of" state law when they allegedly harassed a former guardsman based on "a personal motivation, not specific to individuals possessing state authority." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 685–87 (5th Cir. 2010).[62]

---

[62] These state-action principles apply with equal force in this nonsupervisory-coworker-harassment context. Circuits confronting the question have held that harassment by a nonsupervisory coworker is not done "under color of" state law unless the harassment "involve[s] the use of state authority or position . . . ." *Ottman v. City of Indep.*, 341 F.3d 751, 762 (8th Cir. 2003) (citations omitted); *see also, e.g.*, *Edwards v. Wallace Comm. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995) (holding that nonsupervisory coworkers employed by state did not act "under color of" state law because they did not use their state authority to create a hostile work environment; the "mere fact that [they] were state employees or that the offending acts occurred during working hours [was] not enough" (quotation omitted)); *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995) (holding that police officer's hazing of fellow officer was not done "under color of" state law, even though the harasser was on duty and in uniform, because the harasser "was bent on a singularly personal frolic: tormenting an acquaintance").

Merida fails to cite summary-judgment evidence showing that there is a genuine dispute that Pinkston acted "under color of" state law when making the harassing remarks. The only harassing remark by Pinkston that Merida recalls with specificity is when Pinkston asked Merida "how's my favorite Jewish Spic investigator doing?"[63] Pinkston and Merida were standing outside the police station; another officer, Pat Conaghan, was standing beside Merida.[64] Merida cites no evidence from which a reasonable jury could find that Pinkston's offensive remark involved anything other than Pinkston's "purely private aim" to call Merida offensive names. *Townsend*, 291 F.3d at 862 (quotation omitted). For example, Merida cites no evidence from which a reasonable jury could find that Pinkston's offensive remark was "achieved through the use or misuse of power granted by the state." *Bryant*, 597 F.3d at 686. This record instead reflects that Pinkston acted out of "a personal motivation, not specific to individuals possessing state authority." *Id.*

Accordingly, because Merida fails to direct the Court to evidence from which a reasonable jury could find that Pinkston "use[d] his official power to facilitate" the offensive remark, *Bustos*, 599 F.3d at 465, there is no genuine dispute that Pinkston did not act "under color of" state law. So Pinkston is entitled to summary judgment dismissing Merida's Section 1983 hostile-work-environment claim.[65]

---

[63] ECF No. 45-8 at 35:1–3.

[64] *Id.* at 35:1–17.

[65] Because Merida cites no evidence supporting a conclusion that Pinkston used his official power to facilitate his harassment of Merida, this case is unlike *Tyson v. Sabine. See* 42 F.4th 508, 521–23 (5th Cir. 2022) (reasoning that a police officer acted "under color of" state law when he sexually assaulted the plaintiff while conducting a welfare check on her home because the officer used the authority of his office to facilitate the sexual assault).

But even if Pinkston were not entitled to summary judgment on "under color of law" grounds, he would be entitled to it on another: Merida fails to point the Court to evidence showing that Pinkston's alleged harassment of him was sufficiently severe or pervasive to alter the conditions of his employment.

To show that Pinkston's harassing conduct altered the conditions of Merida's employment, Merida must point the Court to summary-judgment evidence showing that Pinkston's harassing conduct was "both objectively and subjectively offensive." *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (quotation omitted). To decide if Pinkston's harassing conduct created an "objectively offensive" work environment, the Court considers "the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with [Merida's] work performance." *Id.* at 1066–67 (quotation omitted).

"Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe," can establish a hostile work environment. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007). For example, the Fifth Circuit has held that a single incident of a supervisor directly calling an employee a "Lazy Monkey A__ N____" in front of fellow employees was sufficiently severe to support a hostile-work-environment claim. *See Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022); *see also Thomas v. Cook Children's Health Care Sys.*, No. 22-10535, 2023 WL 5972048, at *3 (5th Cir. Sept. 14, 2023) (per curiam) ("[T]he single use of 'an

unambiguously racial epithet' by a supervisor in the presence of subordinates can support a hostile-work-environment claim." (quoting *Woods*, 29 F.4th at 287)).

Applying this totality-of-the-circumstances test at the pleadings stage, the Court concluded that Merida pleaded facts sufficient to plausibly establish the objective component of his hostile-work-environment claim against Pinkston:

> First, as for the severity of Pinkston's alleged discriminatory conduct, as noted above, "spic" is "an unambiguously racial epithet," *Woods*, 29 F.4th at 287, and Pinkston's directly calling Pinkston a "spic" on one specific occasion and "on other past numerous occasions" undoubtedly qualifies as "severe," *Alamo* [*v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017)]. Second, as for the frequency of Pinkston's alleged discriminatory conduct, Merida alleges that Pinkston referred to him a "spic" during a Board meeting and "on other past numerous occasions alone and in the presence of third parties." Third, as for whether Pinkston's alleged discriminatory conduct was "physically threatening or humiliating, or a mere offensive utterance," *Harris [v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)], Merida specifically alleges that Pinkston's particular use of the unquestionably reprehensible term—during an October 2021 Board meeting, "before a gathering of [Merida's] peers and supervisors[,] with [Merida] as a speaker"—"was demeaning, causing [Merida] embarrassment, humiliation, and extreme mental anguish." Accordingly, on balance, Merida's factual allegations plausibly establish that Pinkston's alleged discriminatory conduct was sufficiently severe or pervasive to alter the conditions of Merida's employment.

*Merida*, 2024 WL 4252748, at *14 (footnotes and emphasis omitted).

But that was the pleadings stage; this is summary judgment. To avoid dismissal now, Merida must direct the Court to evidence from which a reasonable jury could find that Pinkston's harassing conduct was sufficiently objectively offensive under the totality of the circumstances to alter the conditions of his employment.

Merida has not done so. Of course, it remains true that "the term 'spic' is 'an unambiguously racial epithet,'" *id.* at *13 (quoting *Woods*, 29 F.4th at 285), and

Pinkston's "use of the term . . . 'evinces a clear animus against a particular national origin,'" *id.* (quoting *Alamo*, 864 F.3d at 550) (citations omitted). Now, as before, "[t]he Court condemns the term's alleged use in the strongest terms." *Id.* But the evidence that is properly before the Court on summary judgment does not match Merida's allegations at the pleadings stage in at least four critical respects.[66]

First, as for the frequency of the harassing conduct, the summary-judgment record reflects that Pinkston called Merida "spic" on just one specific occasion: when Pinkston asked Merida "how's my favorite Jewish spic investigator doing?"[67] To be sure, Merida testified that Pinkston directed that unquestionably reprehensible slur at him other unspecified times, but Merida did not recall *any* details of *any* other instance in which Pinkston directed the slur at him.[68] That is a problem for Merida, because on summary judgment, Merida may not create a genuine dispute of material fact by pointing to "vague and generalized" assertions that Pinkston called him a slur on other unspecified occasions. *Barkley v. Singing River Elec Power Ass'n*, 433 F. App'x 254, 258 (5th Cir. 2011); *see also, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (holding that "conclusory assertions" of harassment unsupported by "concrete examples" were insufficient to create a genuine dispute of material fact); *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 677 (4th Cir. 2011) (holding that testimony that a racial slur was used "a bunch of different times" was insufficient to create a

---

[66] As noted at footnote six, to the extent any allegation in the verified original petition is a well-pleaded factual allegation that could, in theory, qualify as summary-judgment evidence, no such allegation is "properly before" the Court because Merida's opposition brief fails to refer to any such allegation with specificity and proper citation as Rule 56(c)(1)(A) requires. *Malacara*, 353 F.3d at 405.

[67] ECF No. 45-8 at 35:1–3.

[68] *Id.* at 48:19–23.

24

genuine dispute of material fact because it was "wholly unsupported by any detail, context, examples, or time frame" (quotation omitted)).

Second, *contra* Merida's allegations, the summary-judgment record does not support that Pinkston's remark was made at "a gathering of [Merida's] peers and supervisors, with [Merida] as speaker."[69] Instead, the summary-judgment record shows Pinkston made the harassing remark while Pinkston and Merida were standing outside the police station and within earshot of just one colleague, Pat Conaghan.[70] Merida does not point the Court to evidence showing that any supervisor was present or that the remark was made during a meeting at which he was speaking. So the summary-judgment evidence reveals Pinkston's remark to be, in full context, less severe and pervasive than the allegations of Merida's pleadings had indicated.

Third, although Merida alleged that Pinkston's harassing remark "was demeaning" and caused Merida to suffer "embarrassment, humiliation, and extreme mental anguish,"[71] Merida fails to carry his burden to point the Court to specific evidence in the summary-judgment record supporting that allegation. Because Pinkston's harassing remark was "not physically threatening," and because Merida does not point the Court to evidence "that he was humiliated by [the remark]," the remark "was 'merely an offensive utterance' insufficient to establish a hostile work environment." *Price*, 88 F.4th at 1067 (quoting *WC&M Enters.*, 496 F.3d at 399).

---

[69] ECF No. 1-1 at ¶ 27.
[70] ECF No. 45-8 at 35:1–17.
[71] ECF No. 1-1 at ¶ 27.

Fourth and finally, Merida admits that Pinkston's use of the unquestionably reprehensible slur did not "impact [his] ability to do [his] police work."[72] That is important, because it refutes any notion that Pinkston's remark "interfere[d] with [Merida's] work performance." *Price*, 88 F.4th at 1067 (quotation omitted).

In sum, under the totality of the circumstances, the Court finds that Merida fails to carry his burden to point the Court to summary-judgment evidence showing that there is a genuine dispute that Pinkston's conduct was sufficiently objectively offensive to alter the conditions of Merida's employment under binding Fifth Circuit precedent. For this independent reason, Pinkston is entitled to summary judgment dismissing Merida's Section 1983 hostile-work-environment claim against him.

## E. Section 1983 Failure-to-Stop-Harassment Claims Against Chandler and the Authority

The Court grants summary judgment dismissing Merida's Section 1983 claims against Chandler and the Authority for failing to stop harassment because Merida fails to point the Court to evidence from which a reasonable jury could find that the Authority and Chandler were "deliberately indifferent" to the harassment of him.

To hold the Authority and Chandler liable under Section 1983 for inaction in the face of a hostile work environment, Merida must show that the Authority and Chandler were "deliberately indifferent" to the hostile work environment. *Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019) (citation omitted). And to show deliberate indifference here, Merida must show that the Authority and Chandler "disregarded a known or obvious consequence of [their] action[s]." *Id.* (quotation omitted).

---

[72] ECF No. 45-8 at 51:13–15.

Merida fails to show deliberate indifference. Merida admits he did not report Pinkston's and Durnin's alleged harassment, and Merida cites no evidence that the Authority and Chandler knew about Pinkston's and Chandler's alleged harassment.

Accordingly, because Merida fails to point to evidence from which a reasonable jury could find that the Authority and Chandler were "deliberately indifferent" to a hostile work environment, the Authority and Chandler are entitled to summary judgment dismissing Merida's Section 1983 failure-to-stop-harassment claims.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' motion[73] for summary judgment is **GRANTED**. All of Merida's remaining claims are **DISMISSED WITH PREJUDICE**. A final judgment will follow in accordance with Federal Rule of Civil Procedure 58. Merida's motion[74] *in limine* is **DENIED** as moot.

New Orleans, Louisiana, this 11th day of July, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[73] ECF No. 45.
[74] ECF No. 47.

27